C. A. Bryan and Eunice Munn Bryan, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

L. J. Bryan and Eupha Polk Bryan, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 24036, 24037. Promulgated February 28, 1930.

*Harry C. Weeks, Esq.,* for the petitioners.
*L. A. Luce, Esq.,* and *R. B. Cannon, Esq.,* for the respondent.

112

## OPINION.

BLACK: Petitioners in their petitions and amended petitions asserted the errors set forth in our opening statement and numbered one to seven, inclusive. They filed with their petitions the deficiency letters upon which such petitions were respectively based. They alleged in the petitions the facts which they expected to prove with respect to their various contentions. There is alleged in none of the petitions or amended petitions anything which would indicate that the Board does not possess jurisdiction to hear and determine the issues presented, nor is there anything in the evidence to show that

the Board does not have jurisdiction. At the hearing counsel for the petitioners made the following statement:

*Mr. Weeks:* Before proceeding with the trial, I want to make a suggestion of want of jurisdiction on the part of the Board over the tax liability of the wives in this case, upon the ground that there has been no deficiency letter sent to them. Your Honor will see from the amended petitions that the deficiency letter was addressed, respectively, to C. A. Bryan and wife and L. J. Bryan and wife, and in the calculations attached in the statement of the deficiency it is proposed in one lump sum, and upon the authority of the J. A. Staley case, it seems to me there is no deficiency which is covered by the Board's jurisdiction.

It will be perceived that two objections were made to the letters—first, that they were addressed to " C. A. Bryan and wife " and to " L. J. Bryan and wife," respectively, and, second, that these letters proposed a lump-sum deficiency against each husband and wife. The letters were issued pursuant to section 274 of the Revenue Act of 1926, the pertinent part of which reads:

SEC. 274. (a) If in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this title, the Commissioner is authorized to send notice of such deficiency to the taxpayer by registered mail. Within 60 days after such notice is mailed (not counting Sunday as the sixtieth day) the taxpayer may file a petition with the Board of Tax Appeals for a redetermination of the deficiency. * * *

It is first argued that instead of mailing two letters respondent should have mailed four letters—that is, one to each petitioner. It is not claimed that the letters were not sent by registered mail nor is it asserted that they were not mailed to the proper addresses. In this connection it is to be noted that in their respective returns for the year 1919, the only returns filed in evidence, C. A. Bryan and his wife gave the same address, as also did L. J. Bryan and his wife. Not only were the letters mailed to the proper addresses but they were actually received by the very persons to whom they were addressed and within the 60-day period all the addressees filed petitions before the Board seeking a review of the deficiencies therein asserted. Petitioners rely on *J. A. Staley,* 9 B. T. A. 932. We do not think that case is controlling in the instant case. We hold that the deficiency letters sufficiently complied with the statute and that we have jurisdiction to hear these appeals. There is no merit to the contention that the deficiency letters asserted a lump-sum deficiency against each husband and wife. The deficiency letters clearly showed what deficiencies were asserted against each taxpayer and are a sufficient compliance with the statutes. Cf. *American Auto Trimming Co.* v. *Commissioner,* 37 Fed. (2d) 801.

On the merits of the case it is contended by the respondent that the assignment by the Bryan brothers to their wives of their interests in the Hobbs lease was not made in good faith and was ineffectual for the purpose of avoiding taxation on the profit made in the acquisition and sale of the lease. The facts in connection with this transaction have been fully stated in our foregoing findings of fact, and need not be repeated here.

It is clear to us that notwithstanding the methods used by the Bryans in transferring the Hobbs lease to their wives and they in turn, joined by their husbands *pro forma*, transferring it to the Livingston Oil Corporation, there was a profit of approximately $400,000 to the two marital communities, and this profit is taxable to the respective parties in the years when the respective payments were received.

The transfer by the Bryans to their wives was made after they had already entered into a binding contract to sell the lease to the Livingston Oil Corporation for a consideration of $475,000. All the terms of sale had been agreed upon and $25,000 of the purchase price had been paid to the Bryan husbands. The attorneys for the Livingston Oil Corporation had approved the title to the Hobbs lease in O. A. and L. J. Bryan, and actual drilling on the lease had begun by the purchaser, the Livingston Oil Corporation, and the sale was thereby consummated.

Under these circumstances, the assignment by the Bryans to their wives of the Hobbs lease and their subsequent assignment to the Livingston Oil Corporation was entirely ineffective to defeat the tax on the original transaction and we so hold. *John S. Gullborg*, 5 B. T. A. 628; *Taylor Oil & Gas Co.*, 15 B. T. A. 609; *B. P. Bailey et al.*, 18 B. T. A. 105; *Davidson & Case Lumber Co.* v. *Motter*, 14 Fed. (2d) 137.

Respondent assessed fraud penalties against petitioners for the year 1919. The burden of proof to establish fraud is upon respondent and after a careful reading of all the evidence, we conclude that such burden has not been sustained. So much of the deficiencies for 1919 as consist of fraud penalties asserted under section 250 (b) of the Revenue Act of 1918 are disapproved and should be eliminated.

The last question presented is what taxable gain, if any, petitioners made by reason of their acquisition of stock in the Bryan Oil Corporation, hereafter referred to as the Bryan Co. Respondent has determined that petitioner C. A. Bryan received stock of the Bryan Co. of the par value of $280,294.96 and that petitioner L. J. Bryan received stock of the same company of the par value of $211,013.71. He has further determined that the stock had a

fair market value of par. He based his determination largely on the fact that during the period June, 1920, to April, 1921, Sibley & Co. and Ogilvy & Co. sold 184,959½ shares of the stock at par. They remitted to the Bryan Co. the net proceeds of the sale in the sum of $159,188.42. He contends that these sales show that the stock had a fair market value of 100 cents on the dollar. We are not impressed by this contention. The sales were made far from home and to persons who had no knowledge of the condition of the company. The sales were the result of high-pressure methods. The stock was often sold on the installment plan; other sales were made by taking other stock in exchange. The sales were made in small blocks and to farmers and factory operatives. Under the contract between these agents and the Bryan Co. the stock was to net the corporation 85 cents on the dollar and commissions were not to exceed 30 per cent of the sale price. These commissions were such as to promote sales at fictitious prices. The stock was never sold on a stock exchange and neither of the selling agents undertook to underwrite the stock. As said in *Fruen Investment Co.*, 2 B. T. A. 542: "All these circumstances show conclusively to our minds that the stock was not considered worth par by the persons in best position to know its value." We there held that sales similar to those under consideration did not prove market value. This is in harmony with the decisions of the courts. In *Phillips* v. *United States*, 12 Fed. (2d) 598 (affd. 24 Fed. (2d) 195), it is said:

The test is the fair market value. This may be defined to be the value of the property in money as between one who wishes to purchase and one who wishes to sell; the price at which a seller willing to sell at a fair price, and a buyer willing to buy at a fair price, *both having reasonable knowledge of the facts.* (Italics supplied.)

See also *Heiner* v. *Crosby* (C. C. A.), 24 Fed. (2d) 191. Applying the above to the facts before us, it can not be said that the farmers and factory operatives living in Illinois, Michigan, and Ohio who purchased or traded in for small lots of this stock had a reasonable or any knowledge of the condition of the Bryan Co. or of its properties or prospects. We take notice of the eagerness of some people to risk part of their earnings in oil, gold, and similar stock. To such people the question is not a matter of value but of speculation. It is a pertinent fact that no attempt was made at this time to sell this stock at par in the home market. Such a privilege as that was reserved for those who resided at a distance and who were not acquainted with the affairs of the company. Under these circumstances we are of opinion that the sales by Ogilvy and Sibley do not establish the market value of the stock. Nor are we impressed by the fact that the Bryans offered to buy out the Imperial stockholders at par. This will be discussed hereafter. The fact that petitioner

L. J. Bryan, when he saw that the brokers could not sell the stock as contemplated, tried to dispose of some of his own stock at 50 cents and then at 25 cents and could find no purchaser does not show the market value of the stock in March and April, 1920. The fact that in October, 1921, the executive committee resolved that the selling price of the stock should thereafter be $1.50 per share is additional evidence of high-pressure methods. The stock could not then be sold at par. This is sufficient evidence that it could not be sold at a premium.

Notwithstanding the fact that the sales of Sibley and Ogilvy did not establish the fair market value of the stock, we are of opinion that the stock had a real market value. There were large and valuable assets behind the stock which, in our opinion, gave it such value. In the absence of testimony of persons conversant with all the facts which go to make up value, we have the right to ascertain the value of property behind the stock or the value placed on the stock by persons who were in position to know its true value. *Phillips* v. *United States*, and *Heiner* v. *Crosby*, both *supra*.

Here we have the stipulation in the contract between the Bryans and the trustees of the Imperial Co. In making that contract, the parties dealt at arm's length. The Bryans had been acting in the management of the Imperial Co. and were thoroughly conversant with the values of its properties. In that contract it was expressly agreed that the net value of the assets of the Imperial Co. was the amount of $368,972.58. This value, placed upon these assets by the parties who possessed knowledge of all the facts and who made it the basis of their contract, carries far more weight than the testimony of expert witnesses given nine years after the event.

To these assets the Bryans contributed two oil leases, which cost them $3,500. No oil was found on these properties and nothing occurred to enhance their value between the date of acquisition and the date they were transferred to the Bryan Co. We have found that their value was their cost. Adding the sum of $3,500 to the net value of the assets of the Imperial Co., we arrive at a total value of the assets of the Bryan Co. of $372,472.58. Against these assets stock was issued in shares of the par value of $1 each to the extent of 751,000 shares. On this basis we have found that the fair market value of each share was 49½ cents.

At this point it is contended by petitioners that this value should be offset by the liability of the Bryans to redeem within a certain period the stock of the Imperial Co. at par and also within a certain additional period to redeem the stock of the Bryan Co. at par. On the other hand, respondent asserts that this agreement shows that the stock of the Bryan Co. was worth par. The contract was to redeem the stock of the Imperial Co. The further contract to redeem

the stock of the Bryan Co. added nothing to this, since the stock of the old company was exchanged for the stock of the new, dollar for dollar par value. We have found that the net assets of the old company equaled the par value of its stock, with the result that the Bryans would lose nothing by such redemption whether they redeemed the new stock or the old. For the same reason, the contract does not show that the new stock was worth par. All that the old stockholders could receive was the value of their respective interests in the old company. What is more vital from the Bryans' standpoint is that before the organization of the Bryan Co. they contracted with Sibley and Ogilvy to sell the stock of the new company for the purpose of meeting this very obligation and then shifted the burden of their agreement to the Bryan Co., so that they not only could not have lost by such redemption, but in fact had shifted the obligation to redeem onto the new corporation and had entered into a contract to sell treasury stock to others for the very purpose of enabling the company to meet this obligation. We find no merit in these contentions of petitioners and respondent and adhere to the value which we have placed upon the stock of the Bryan Co. in our findings of fact.

Upon final computation the basis for the computations of gain by petitioners should be the cost to them of their stock in the Imperial Co. plus the cost of the two leases contributed by them. Against this basis should be placed the value of all the stock acquired by them in the Bryan Co. at a value of 49½ cents per share.

The claims of the Bryan wives for deduction of $2,500 each for attorneys' fees is disallowed. No evidence was introduced to support such a deduction.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

MURDOCK concurs in the result only.